# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HOWARD SMITH, #416157,

                Petitioner,

v.                                    Case No. 2:15-cv-11712

DAVID BERGH,

                Respondent.

_____

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS

Petitioner Howard Smith has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a bench trial in the Wayne County Circuit Court, Petitioner was convicted of second-degree murder, Mich. Comp. Laws § 750.317, carrying a concealed weapon, Mich. Comp. Laws § 750.227, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. He was sentenced to 20 to 35 years imprisonment on the murder conviction, concurrent terms of one to five years imprisonment on the concealed weapon and felon in possession convictions, and a consecutive term of two years imprisonment on the felony firearm conviction. In his pleadings, Petitioner raises claims concerning double jeopardy, the sufficiency of the evidence, the conduct of the prosecutor, the application of state self-defense law, and the effectiveness of trial and appellate counsel. For the reasons that follow, the court denies with prejudice the habeas petition. The court also denies a certificate of

appealability and denies leave to proceed in forma pauperis on appeal.

## II. Facts and Procedural History

Petitioner's convictions arise from a firearm death. The relevant facts, as decided

by the Michigan Court of Appeals, are presumed correct. *See* 28 U.S.C. § 2254(e)(1);

*Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

> Smith's convictions arise from the shooting death of Farrod Potter during
> the early morning hours of June 27, 2010, outside a lounge in Detroit. At
> trial, several witnesses, including Raymond Grant, testified that they had
> celebrated a family birthday at the lounge. As Grant was entering the
> lounge, he accidentally stepped on Smith's shoe. Grant apologized to
> Smith before they continued on their separate ways. Near the lounge's
> closing time, Smith followed Grant's aunt across the street to talk. Shortly
> thereafter, Grant and a group of friends, including Potter, came across the
> street. Grant again apologized to Smith, who declined to acknowledge his
> acceptance of the apology. Although Grant became irritated by Smith's
> attitude, the testimony of the several trial witnesses consistently described
> that Grant and his acquaintances walked away from Smith back toward
> the lounge or their cars. Smith, who was armed with a .25–caliber
> handgun, jogged or walked in pursuit of Grant and his acquaintances.
> Smith declared that he should shoot someone in the back, after which
> Smith drew his handgun. Grant grabbed Smith around his arms to prevent
> Smith from shooting, but Smith was able to raise the gun toward Potter
> and shoot him once in the chest. No evidence suggested that Grant or his
> acquaintances possessed weapons of any kind that morning, or that any
> of them ever threatened Smith. Smith raised a self-defense claim at trial.

*People v. Smith*, No. 301559, 2012 WL 832848, at *1 (Mich. Ct. App. March 13, 2012).

Following his convictions and sentencing, Petitioner filed an appeal of right with

the Michigan Court of Appeals raising the following claims:

> I.     Convictions and sentences for both felon in possession of a
>        firearm and felony firearm violate the Double Jeopardy
>        Clause. U.S. Const. amend. V.
>
> II.    The conviction for second degree murder, carrying a
>        concealed weapon, and felony firearm must be reversed
>        where the prosecution failed to present sufficient evidence to
>        disprove self-defense, thus violating his Amends. V and XIV

rights to be convicted only upon proof beyond a reasonable doubt.

III.    The evidence was insufficient to support the charge of second-degree murder. If at all, the conviction can be no more than involuntary manslaughter.

IV.    The prosecutor committed misconduct by misleading the court when presenting and offering a stipulation during closing arguments that was never stipulated to by the defense and when presenting misleading witness testimony, which deprived Defendant of a fair trial and violated Defendant's right to due process under the Michigan and United States Constitutions.

V.    Trial counsel's failure to object to and preserve the prosecution's misleading misstatements of witness testimonies, along with his misrepresentation of stipulations offered to the court during trial, deprived Defendant of his state and federal constitutional right to effective assistance of counsel and a fair trial.

The court denied relief on those claims and affirmed his convictions. *Id.* at *1–6.

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Smith*, 492 Mich. 867, 819 N.W.2d 873 (2012).

Petitioner subsequently filed a motion for relief from judgment with the state trial court raising the following claims:

I.    Did the trier of fact apply the incorrect law of self defense violating the due process rights of the defendant as guaranteed to him under the U.S. Const. and the Mich. Const. 1963, Art. 1 §§ 17, 20?

II.    Must Defendant's second-degree murder conviction be reversed where the prosecution failed to establish the necessary elements beyond a reasonable doubt, resulting in the violation of Defendant's due process rights under the U.S. Constitutional Amendment V and XIV, and the Michigan Constitution 1963, Art 1, §§ 17, 20?

III.     Did the prosecutor commit misconduct by intentionally misleading and lying to the trial court, misquoting and misrepresenting testimony, violating Defendant's substantial rights under U.S. Const. Amends. V, VI, XIV, and the Mich. Const. 1963, Art 1, §§ 17, 20?

IV.     Did the prosecutor commit misconduct and abuse his authority by overcharging Defendant with second-degree murder where the facts and evidence only supported self-defense accidental death, or at most, manslaughter, denying Defendant his due process rights under the U.S. Const. Amends. V, VI, XIV, and the Mich. Const. 1963, Art. 1 §§ 17, 20?

V.     Did the prosecutor commit misconduct by arguing facts not in evidence, violating Defendant's due process rights under the U.S. Const. Amends. V, VI, XIV, and the Mich. Const. 1963, Art. 1 §§ 17, 20?

VI.     Was Defendant denied effective assistance of trial counsel, violating his constitutional rights under [both] state and federal Constitutions where counsel failed to present evidence that would have been exculpatory in nature?

VII.     Was Defendant denied his right to the effective assistance of appellate counsel where counsel failed to raise the herein issues on direct appeal. U.S. Const. Amends. VI and XIV; Mich Const 1963, Art. 1, §§ 17, 20?

The court denied relief citing Michigan Court Rule 6.508(D)(2) and (D)(3). The court also ruled that Petitioner failed to establish that appellate counsel was ineffective.

*People v. Smith*, No. 10-007618-01-FC (Wayne Co. Cir. Ct. Oct. 25, 2013). Petitioner then filed an application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to establish entitlement to relief under MCR 6.508(D)." *People v. Smith*, No. 319896 (Mich. Ct. App. June 27, 2014). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Smith*, 497 Mich. 1010, 861 N.W.2d 893 (2015).

Petitioner thereafter filed his federal habeas petition. (Dkt. #1.) He raises the 12

claims that he raised on direct appeal and collateral review of his convictions in the state courts. Respondent has filed an answer to the petition (Dkt. #5) contending that it should be denied because the claims lack merit and/or are barred by procedural default.

### III. Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle

from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520–21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1702 (2014).  Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, __ U.S. __, 135 S. Ct. 1372, 1376 (2015).  A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable.  *Woods v. Etherton*, __ U.S. __, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71–72.  Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100.  Furthermore, it "does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by

Supreme Court precedent.  Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief.  *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per curiam); *see also Lopez v. Smith*, __ U.S. __, 135 S. Ct. 1, 2 (2014) (per curiam).  The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

A state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).  Lastly, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### IV.  Discussion

### A.  Direct Appeal Claims

### 1.  Double Jeopardy (Habeas Claim I)

Petitioner first asserts that he is entitled to habeas relief because his convictions for felon in possession of a firearm and possession of a firearm during the commission of a felony violate double jeopardy principles.  Respondent contends that this claim lacks merit.

The Michigan Court of Appeals ruled that this claim lacked merit given the Michigan cases that have previously concluded that multiple punishments for felon in possession and felony firearm are authorized by the state legislature and do not violate

double jeopardy principles. *Smith*, 2012 WL 832848, at *1–2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted). "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

In the context of multiple punishments, however, the Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses. As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . ., the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). Thus, "even if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986). When "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end

9

and the prosecutor may seek and the trial court or jury may impose cumulative

punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359,

368–69 (1983). In determining whether the Michigan legislature intended to authorize

separate, cumulative punishments under the circumstances presented, the court "must

accept the state court's interpretation of the legislative intent for the imposition of

multiple punishments." *Brimmage*, 793 F.2d at 1015; *see also Hunter*, 459 U.S. at 368.

Whether punishments imposed are constitutional is essentially a question of

legislative intent, and a state court's determination that a state legislature intended

multiple punishments is binding on habeas corpus review. *Banner v. Davis*, 886 F.2d

777, 780 (6th Cir. 1989). Michigan's felony firearm statute provides:

> A person who carries or has in his or her possession a firearm when he
> or she commits or attempts to commit a felony, except a violation of
> section 223 [unlawful sale of a firearm], section 227 [carrying a concealed
> weapon], 227a [unlawful possession of a firearm by a licensee] or 230
> [alternation of identifying marks on a firearm], is guilty of a felony, and
> shall be imprisoned for 2 years.

Mich. Comp. Laws § 750.227b(1). The Michigan Supreme Court, in light of the

language of this section and the legislative history, has concluded that "the

Legislature's intent in drafting the felony-firearm statute was to provide for an additional

felony charge and sentence whenever a person possessing a firearm committed a

felony other than those four explicitly enumerated in the felony-firearm statute." *People*

*v. Mitchell*, 575 N.W.2d 283, 285 (Mich. 1998). In *People v. Calloway*, 671 N.W.2d 733

(Mich. 2003), the Michigan Supreme Court followed *Mitchell* and specifically ruled that

"[b]ecause the felon in possession charge is not one of the felony exceptions in the

statute, it is clear that defendant could constitutionally be given cumulative

punishments when charged and convicted of both felon in possession, MCL

§ 750.224f, and felony-firearm, MCL § 750.227b." *Id.* at 452.        Given the

foregoing cases, the state court's denial of relief is neither contrary to Supreme Court

precedent nor an unreasonable application of federal law. Habeas relief is not

warranted on this claim.

### 2. Sufficiency of the Evidence (Habeas Claims II & III)

Petitioner next asserts that he is entitled to habeas relief because the prosecutor

failed to present sufficient evidence to negate his self-defense claim and to support his

convictions for second-degree murder, carrying a concealed weapon, and felony

firearm.[1]  Respondent contends that these claims lack merit.

The Due Process Clause "protects the accused against conviction except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  The question on a

sufficiency of the evidence claim is "whether, after viewing the evidence in the light

most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443

U.S. 307, 319 (1979).  The *Jackson* standard must be applied "with explicit reference

to the substantive elements of the criminal offense as defined by state law." *Brown v.*

*Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

A federal habeas court views this standard through the framework of 28 U.S.C.

§ 2254(d).  *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Thus, under the

AEDPA, challenges to the sufficiency of the evidence "must survive two layers of

---

[1]Petitioner does not challenge the sufficiency of the evidence to support his felon in possession conviction.  At trial, he stipulated that he was a felon not authorized to possess a weapon and did not dispute that he possessed a firearm at the time of the altercation.

deference to groups who might view facts differently" than a reviewing court on habeas review—the factfinder at trial and the state court on appellate review—as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the [fact finder]—not the court—to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788–89.

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. Mich. Comp. Laws § 750.317; *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998) (citing *People v. Bailey*, 549 N.W.2d 325, 331 (Mich. 1996)). Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *Id.*(citing *People v. Aaron*, 299 N.W.2d 304, 326 (Mich. 1980)). Malice may be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm. *People v. Djordjevic*, 584 N.W.2d 610, 612 (Mich. Ct. App. 1998) (citing *Aaron*). Malice may also be inferred from the use of a deadly weapon. *People v. Carines*, 597 N.W.2d 130, 136 (Mich. 1999). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense. *People v.*

*Jolly*, 502 N.W.2d 177, 180 (Mich. 1993).

The elements of carrying a concealed weapon are that the defendant carried a pistol, or other dangerous weapon, concealed on his person, in a place other than his dwelling house, place of business, or other land possessed by him, and without a license to do so.  Mich. Comp. Laws § 750.227; *People v. Davenport*, 282 N.W.2d 179, 181 (Mich. Ct. App. 1979).  To "carry" means "to hold, transport, or take from one location to another."  *People v. Terry*, 335 N.W.2d 116, 118 (Mich. Ct. App. 1983).  The elements of felony firearm are:  (1) the defendant possessed a firearm, (2) during the commission of, or an attempt to commit, a felony offense.  Mich. Comp. Laws § 750.227b; *People v. Akins*, 675 N.W.2d 863, 873 (Mich. Ct. App. 2003) (quoting *People v. Avant*, 597 N.W.2d 864, 869 (Mich. Ct. App. 1999)).

The prosecution must prove every element of a charged offense beyond a reasonable doubt.  This burden includes proving that the defendant is the person who committed the crime.  *People v. Oliphant*, 250 N.W.2d 443, 449 (Mich. 1976); *People v. Kern*, 149 N.W.2d 216, 218 (Mich. Ct. App. 1967).  Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 614 N.W.2d 78, 81 (Mich. 2000); *People v. Jolly*, 502 N.W.2d 177, 180 (Mich. 1993); *see also People v. Johnson*, 381 N.W.2d 740, 742 (Mich. Ct. App. 1985), including identity, *Kern*,149 N.W.2d at 218, and intent or state of mind,  *People v. Dumas*, 563 N.W.2d 31, 34 (Mich. 1997).

Applying the foregoing standards, the Michigan Court of Appeals denied relief on these claims, concluding that the prosecution presented sufficient evidence to negate Petitioner's self-defense claim and to support his convictions.  *Smith*, 2012 WL

832848 at *2–3. The court explained in relevant part:

> In this case, the evidence presented by the prosecutor showed that (1) Grant and several others approached Smith as he talked to Grant's aunt; (2) Grant and Smith exchanged some brief, contentious discussion about whether Smith should accept Grant's apology; (3) shortly thereafter, Grant and his acquaintances began walking away from Smith; (4) Smith then decided to pursue Grant and his acquaintances, and announced moments later that he should shoot someone in the back; and (5) at no point around the time of the shooting did Grant or any of his acquaintances have any kind of weapon or threaten Smith in any way. From these circumstances, a rational trier of fact could find beyond a reasonable doubt that Smith did not possess an honest and reasonable belief that he faced an imminent danger of death or great bodily harm. Furthermore, the testimony of the prosecution witnesses does not support a finding that Smith necessarily employed deadly force when he shot Potter. To the contrary, the testimony showed that Smith ignored "an obvious and safe avenue of retreat" and became the aggressor in the situation when he decided to pursue and threaten Grant and his acquaintances as they walked away from Smith. Accordingly, there was sufficient evidence to disprove Smith's theory of self-defense beyond a reasonable doubt.
>
> ***
>
> The evidence introduced by the prosecutor supported that the discharge of Smith's handgun caused Potter's death. Concerning the requisite malice element, the trial court justifiably found that, at a minimum, the record reflected that Smith intentionally committed "an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." Grant's aunt recalled seeing Smith holding his handgun minutes before the shooting. The testimony of Grant and three of his acquaintances who were outside the lounge established that Smith drew his handgun while pursuing Grant and his acquaintances, that Smith and Grant wrestled, that Smith managed to point the handgun toward Potter, and that seconds later Smith fired a shot into Potter's chest. This testimony was sufficient to enable the trial court to find beyond a reasonable doubt that Smith "inten[ded] to do an act that is in obvious disregard of life-endangering consequences." In regard to the final element necessary to show second-degree murder, with the absence of any justification or excuse for the killing, as previously discussed above, the trial court reasonably found that the evidence did not support Smith's theory of self-defense, and that there was no other excuse or justification for the shooting. Viewed in the light most favorable to the prosecution, the evidence at trial belies Smith's suggestion that the shooting was accidental, most significantly the testimony about Smith's threat to shoot moments before he discharged his gun, together with the evidence that Grant never touched Smith's

handgun while wrestling with Smith, and that Smith successfully raised the gun toward Potter immediately before the shooting.

*Id.* (footnote citations omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecution presented ample evidence, including credible eyewitness testimony, to support Petitioner's convictions for second-degree murder, carrying a concealed weapon, and felony firearm. There was no testimony that Grant or his friends threatened Petitioner or that they possessed weapons at the time of the altercation. Viewed in a light favorable to the prosecution, the testimony presented at trial was sufficient for the trial court, sitting as the finder of fact, to conclude beyond a reasonable doubt that Petitioner had the requisite intent to support a second-degree murder conviction, that he did not act in self-defense, that the shooting was not accidental, and that he committed the related weapons offenses.

Petitioner's claim that he is entitled to habeas relief based upon the prosecution's alleged failure to disprove that he shot the victim in self-defense is not cognizable on habeas review. As other judges in this district have explained:

> Under Michigan law, self-defense is an affirmative defense. *See People v. Dupree*, 486 Mich. 693, 704, 712, 788 N.W.2d 399 (2010). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime.'" *People v. Reese*, 491 Mich. 127, 155, n. 76, 815 N.W.2d 85 (2012)(quoting *Dupree*, 486 Mich. at 704, n. 11). Although under Michigan law the prosecutor is required to disprove a claim of self-defense or defense of others, *See People v. Watts*, 61 Mich. App. 309, 311, 232 N.W.2d 396, 398 (1975), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required. . . ." *See Smith v. United States*,133 S. Ct. 714, 719 (2013)(quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). The Supreme Court and the Court of Appeals for the Sixth Circuit have rejected the argument that the Constitution requires the prosecution to disprove self-defense beyond a reasonable doubt. *See Gilmore v. Taylor*, 508 U.S. 333, 359

(1993)(Blackmun, J., dissenting)("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt"); *Martin v. Ohio*, 480 U.S. 228, 233-36 (1987); *see also Allen v. Redman*, 858 F. 2d 1194, 1197 (6th Cir. 1988)(explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F.2d 50 (6th Cir. 1986)). Therefore, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999). Petitioner's claim that the prosecutor failed to disprove his affirmative defense is non-cognizable on habeas review. *Id.*; *Allen v. Redman*, 858 F.2d at 1200.

*Williams v. Jackson*, No. 2:16-CV-12042, 2017 WL 1493012, at *9 (E.D. Mich. April 26, 2017) (Tarnow, J.); *see also Christian v. Romanowski*, No. 2:15-CV-12846, 2017 WL 588458, at *4 (E.D. Mich. Feb. 14, 2017) (Drain, J.); *Glover v. Woods*, No. 2:14-CV-12630, 2017 WL 491940, at *4 (E.D. Mich. Feb. 7, 2017) (Edmunds, J.); *Awraha v. Harry*, No. 2:14-CV-11761, 2014 WL 2005132, at *3 (E.D. Mich. May 16, 2014) (Battani, J.); *Buckner v. Tribley*, No. 2:12-CV-12592, 2013 WL 1414438, at *6 (E.D. Mich. April 8, 2013) (Rosen, J.).

Moreover, even if such a claim were cognizable, Petitioner is not entitled to habeas relief, as the trial court and the Michigan Court of Appeals reasonably rejected Petitioner's self-defense claim. The testimony that Petitioner pursued Raymond Grant, victim Farrod Potter, and their friends after they spoke outside the lounge; threatened to shoot someone; and pulled out a gun before anyone touched him supports the finding that he was the aggressor, that he could have retreated (even if he was not obligated to do so), and that he did not possess an honest and reasonable belief that he faced an imminent danger of death or great bodily harm at the time of the incident.

The prosecution presented sufficient evidence to disprove Petitioner's self-defense claim beyond a reasonable doubt.

Petitioner challenges the trial court's credibility determinations and the inferences that the trial court drew from the evidence presented at trial, but it is the job of the fact-finder at trial, not a federal habeas court, to resolve such evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). A federal court reviewing a state court conviction on habeas review that is "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos*, 565 U.S. at 7 (quoting *Jackson*, 443 U.S. at 326); *Walker v. Engle*, 703 F.2d 959, 969–70 (6th Cir. 1983) (same). The trial court's verdict and the Michigan Court of Appeals' decision affirming that verdict were reasonable. The evidence at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed the crimes of which he was convicted.

Lastly, to the extent that Petitioner asserts that the trial court erred under state law in some fashion, he fails to state a claim upon which habeas relief may be granted. *See, e.g.*, *King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001) (upholding district court's ruling that petitioner failed to state a habeas claim where he alleged that trial court erred in denying directed verdict motion). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived

errors of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Habeas relief is not warranted on these claims.

### 3.  Prosecutorial Misconduct (Habeas Claim IV)

Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by misstating the autopsy stipulation when arguing that there was no evidence of close-range firing, by stating that Raymond Grant testified that Petitioner had threatened to shoot him in the back, by misrepresenting Grant's testimony about observing Petitioner aiming his gun, and by failing to properly question Darius Rolack about the victim's actions during the altercation.  Respondent contends that these claims are barred by procedural default and/or that they lack merit.

Federal habeas relief may be denied as to a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85–87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991).  The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001).  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).  The last explained state court ruling is used to make this determination.  *Ylst v.*

*Nunnemaker*, 501 U.S. 797, 803–05 (1991).

The Michigan Court of Appeals rendered the last reasoned opinion on this claim. In denying relief, the court relied upon the failure to object at trial. *Smith*, 2012 WL 832848, at *4. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *People v. Carines*, 597 N.W.2d 130, 138 (Mich. 1999); *People v. Stanaway,* 521 N.W.2d 557, 579 (Mich. 1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied relief on these claims based upon a procedural default—the failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784–85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated the ability to comply with the state's procedural

rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991).

In this case, Petitioner alleges ineffectiveness of trial counsel as cause to excuse the failure to object at trial. Petitioner, however, cannot establish that trial counsel erred or that he was prejudiced by counsel's conduct so as to establish cause, nor can he establish prejudice to excuse the default, because the underlying prosecutorial misconduct claims lack merit.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *see also Parker v. Matthews*, __ U.S. __, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darde*n is the proper standard).

In this case, Petitioner fails to show that the prosecutor's conduct was improper, let alone unfair. As explained by the Michigan Court of Appeals on plain error review, the prosecutor's remark that there was no evidence of close-range firing was a reasonable inference from the parties' autopsy stipulation (although the stipulation did not explicitly indicate that there was no close-range firing) and was relevant to rebut

Petitioner's claim of self-defense; the prosecutor's arguments about Petitioner's threats to shoot someone in the back were based upon the trial testimony of Raymond Grant, Kyrie Kirby, and Darius Rolack and the prosecutor did not argue that Petitioner threatened to shoot Grant specifically; and the prosecutor's statements about Grant's involvement in the struggle with Petitioner were based upon testimony from Grant, Kirby, Rolack, and Chelsie Hicks. *See Smith*, 2012 WL 832848, at *4. While prosecutors may not misstate the evidence, *United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001), or argue facts not in evidence, *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004), they can make arguments based upon the evidence and have "'leeway to argue reasonable inferences from the evidence' during closing arguments." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (quoting *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)). Such was the case here.

Additionally, as discussed by the Michigan Court of Appeals, the prosecutor's questioning and redirect examination of Darius Rolack about the victim's actions during the altercation were appropriate. *See Smith*, 2012 WL 832848, at *5. It is well-settled that a prosecutor's good faith effort to admit evidence does not constitute misconduct, particularly where, as here, the trial court admits the evidence. *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). Petitioner fails to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair.

Moreover, even if the prosecutor erred in some fashion, Petitioner cannot establish that he was prejudiced. The fact that the trial judge was the trier of fact mitigates any possible prejudice arising from the alleged prosecutorial misconduct. A judge in a bench trial is presumed to have considered only relevant and admissible

evidence in reaching his or her decision. *See Harris v. Rivera*, 454 U.S. 339, 346 (1981) (per curiam) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."); *United States v. Joseph*, 781 F.2d 549, 552 (6th Cir.1986) (presumption in federal criminal bench trial is that trial judge considered only properly admitted evidence); *Brown v. Pitcher*, 19 F. App'x 154, 157 (6th Cir. 2001) (applying this rule in a habeas case). Petitioner has not rebutted this presumption. The trial court's findings of fact and conclusions of law show that the trial court relied upon properly admitted evidence and appropriate legal standards in rendering its decision. *See* 11/9/10 Trial Tr. Dkt. #6-4 Pg. ID 430–78. Petitioner fails to establish that the prosecutor erred or that any improper conduct rendered his trial fundamentally unfair.

Petitioner also fails to demonstrate that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 479–80 (1986). To be credible, such a claim requires a petitioner to provide new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Moreover, actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner makes no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### 4. Ineffective Assistance of Trial Counsel (Habeas Claim V)

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct and for

confirming the prosecutor's version of the autopsy stipulation. Respondent contends that these claims lack merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the

benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Harrington*, 562 U.S. at 105 (internal and end citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

The Michigan Court of Appeals denied relief on these claims, finding that Petitioner could not show that counsel was ineffective for failing to object to the alleged instances prosecutorial misconduct because the underlying claims lacked merit and that, contrary to Petitioner's assertions, trial counsel repeatedly argued that the record did not discount the possibility that Petitioner shot the victim at close range so as to support his self-defense claim.  *Smith*, 2012 WL 301559, at *6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  First, given the state court's determination, as well as this court's ruling, that the underlying prosecutorial misconduct claims lack merit, Petitioner cannot establish that trial counsel erred or that he was prejudiced by counsel's conduct.  Counsel cannot be deemed deficient for

failing to make a meritless argument or a futile objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Second, the record indicates that counsel advocated for Petitioner's self-defense claim and argued that the autopsy report did not negate that a close-range firing occurred consistent with that defense. Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on these claims.

## B. Collateral Review Claims

### 1. Procedural Default

Petitioner first raised his sixth through twelfth habeas claims in the state courts on collateral review, and those courts denied relief pursuant to Michigan Court Rule 6.508(D). This raises the issue of procedural default. The court is aware that Respondent does not raise the issue of procedural default in his answer. A federal habeas court, however, may raise the issue sua sponte, particularly where, as here, Petitioner has acknowledged and argued the issue (Dkt. #1-1 Pg. ID 100, Dkt. #1-2 Pg. ID 101–02). *See Day v. McDonough*, 547 U.S. 198, 209 (2006); *Mariswamy v. Warren*, 570 F. App'x 461, 462 n.2 (6th Cir. 2014); *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (citing *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005)); *Sowell v. Bradshaw*, 372 F.3d 821, 830 (2004).

As noted, federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright*, 433 U.S. at 85–87. The doctrine of procedural default applies when a

petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White*, 431 F.3d at 524; *Howard*, 405 F.3d at 477; *Coleman*, 244 F.3d at 539. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris*, 489 U.S. at 263–64. The last-explained state court ruling is used to make this determination. *Ylst*, 501 U.S. at 803–05. If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner first presented his sixth through twelfth habeas claims to the state courts in his motion for relief from judgment before the trial court, which denied relief on the sixth through eleventh claims pursuant to Michigan Court Rule 6.508(D)(2) and (D)(3) and denied relief on the merits of the twelfth claim (ineffective assistance of appellate counsel). The Michigan Court of Appeals and the Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief that could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). The Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *Guilmette v. Howes*, 624 F.3d 286, 291–92 (6th Cir. 2010) (en banc). Consequently, under

*Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court denied relief on procedural grounds by ruling that Petitioner had previously raised due process, prosecutorial misconduct, and ineffective assistance of trial counsel claims on direct appeal such that the same claims are barred by Michigan Court Rule 6.508(D)(2). It also ruled that Petitioner had not shown cause or prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise any additional claims on direct appeal. *See Smith*, Wayne Co. Cir. Ct. No. 10-007618-01-FC, at *1–4. The state courts thus relied upon procedural default to deny Petitioner relief on his sixth through eleventh habeas claims. Accordingly, those claims are procedurally defaulted.

As noted, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750–51; *Gravley*, 87 F.3d at 784–85. Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default. Petitioner, however, cannot establish cause to excuse his default, or actual prejudice, as his sixth through eleventh habeas claims lack merit. *See* discussion *infra*. Also, as previously explained, Petitioner fails to demonstrate that a fundamental miscarriage of justice has occurred by showing that he is actually innocent of the crime. These claims are thus barred by procedural default, otherwise lack merit, and do not warrant habeas relief.

### 2. Merits

#### a. Application of Self-Defense Law (Habeas Claim VI)

Petitioner asserts that he is entitled to habeas relief because the trial court misapplied the law of self-defense in violation of his due process rights. To the extent that Petitioner challenges the trial court's application of state law, however, this claim is not cognizable. It is well-settled that state courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780 (1990); *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860. Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67–68. Moreover, as discussed by Respondent, a review of the trial court's findings fails to support Petitioner's assertion that the trial court misunderstood or misapplied state law on self-defense. *See* 11/9/10 Trial Tr. Dkt. #6-4 Pg. ID 449–50. Additionally, to the extent that Petitioner challenges the trial court's rationale for rejecting his claim of self-defense and its finding that he acted with the requisite intent to support his second-degree murder conviction, the court has already ruled that the prosecution presented sufficient evidence to support Petitioner's convictions. *See* discussion *supra*. Petitioner's additional arguments are unavailing. Habeas relief is not warranted on this claim.

#### b. Sufficiency of Evidence (Habeas Claim VII)

Petitioner again asserts that he is entitled to habeas relief because the evidence was insufficient to support his second-degree murder conviction. Petitioner challenges the trial court's factual findings and the prosecution's arguments. The court, however, has already concluded that the prosecution presented sufficient evidence to support

Petitioner's convictions. The fact that some evidence, or inferences from the evidence, may have supported his claims of self-defense or accidental shooting does not mean that the trial court erred in concluding otherwise or that Petitioner is entitled to habeas relief. To be sure, the trial court was not required to accept Petitioner's version of the facts—and this court must view the evidence in a light most favorable to the prosecution. *See, e.g.*, *Williams v. Jones*, 231 F. Supp. 2d 586, 595 (E.D. Mich. 2002) (Lawson, J.). Habeas relief is not warranted on this claim.

### c. Prosecutorial Misconduct (Habeas Claim VIII, IX, X)

Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by lying to the trial court and misstating/misquoting the trial testimony, by overcharging him, and by arguing facts not in evidence. As noted, to prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643; *Darden*, 477 U.S. at 181 (citing *Donnelly*); *see also Parker*, 132 S. Ct. at 2153 (confirming that *Donnelly/Darden* is the proper standard).

Petitioner fails to establish that the prosecutor erred and/or that any such error deprived him of a fundamentally fair trial. Petitioner asserts that the prosecutor "lied" during opening statements when he said that Farrod Potter, rather than Raymond Grant, stepped on Petitioner's shoe in the lounge. Rather than lying, however, it is clear that the prosecutor merely misspoke, as the prosecutor never reiterated his remark. More importantly, Petitioner cannot show that he was prejudiced by the misstatement given that the trial court found that Grant stepped on Petitioner's shoe.

*See* 11/9/10 Trial Tr. Dkt. #6-4 Pg. ID 433, 438, 441, 451, 454–55.

Petitioner also asserts that the prosecutor "lied" about whether Potter's group surrounded him. The prosecutor's argument, however, was that the group did not instigate the confrontation and surround Petitioner in an intimidating fashion so as to justify the use of deadly force. That argument was consistent with the witness testimony that Grant grabbed Petitioner and the others came forward to intercede in the altercation only after Petitioner threatened to shoot someone in the back and pulled out a gun from his pocket. *See* 11/8/10 Trial Tr. Dkt. #6-3 Pg. ID 290–91, 293, 295, 317, 364, 381. No misconduct occurred.

Petitioner also asserts that the prosecutor misstated the law of self-defense during opening statements by saying that Petitioner did not take advantage of his duty to retreat. The prosecutor, however, did cite the proper self-defense standard when he argued that Petitioner did not have a reasonable or honest belief that he was in danger of death or great bodily harm based upon all of the circumstances surrounding the incident. As part of those remarks, the prosecutor noted that Petitioner could have retreated but did not do so. *See* 11/08/10 Trial Tr. Dkt. #6-3 Pg. ID 264–65. Moreover, even assuming that the prosecutor's comments were incorrect, Petitioner fails to show that he was prejudiced or that his trial was fundamentally unfair. The record indicates that the trial court properly understood the elements of second-degree murder and the law of self-defense and appropriately applied those legal principles to the facts of the case. *See* 11/09/10 Trial Tr. Dkt. #6-4 Pg. ID 448–50, 455–75. Lastly, contrary to Petitioner's assertion, the "no duty to retreat" provision of Mich. Comp. Laws § 780.972 does not apply to his situation because he was committing crimes (carrying a

concealed weapon and felon in possession) at the time of incident.

Petitioner also asserts that the prosecutor knowingly presented false testimony because Grant's direct examination testimony differed from his police statements. The Supreme Court has made clear that the "deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972). It is thus well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew that the statements were false. *Coe*, 161 F.3d at 343. A habeas petitioner bears the burden of proving that the disputed testimony constituted perjury. *Napue*, 360 U.S. at 270.

Petitioner makes no such showing. Petitioner fails to establish that Grant's trial testimony was false, rather than merely inconsistent or a clarification or supplementation of his prior police statement. The fact that a witness contradicts himself or changes his story does not establish perjury. *United States v. Wolny*, 133 F.3d 758, 763 (10th Cir. 1998); *United States v. Lebon*, 4 F.3d 1, 2 (1st Cir. 1993). In fact, on cross-examination, Grant acknowledged that he left some things out of his police statement. *See* 11/8/10 Trial Tr. Dkt. #6-3 Pg. ID 302–04. "While a prosecutor

may not knowingly use perjured testimony, a prosecutor is not required to ensure that prosecution witnesses' testimony be free from all confusion, inconsistency, and uncertainty." *Jackson v. Lafler*, No. 06-CV-15676, 2009 WL 1313316, at *12 (E.D. Mich. May 11, 2009) (Edmunds, J.). Petitioner fails to show that the prosecutor knowingly presented false information. Moreover, Petitioner cannot establish that he was prejudiced. Given defense counsel's cross-examination, the trial court, sitting as the finder of fact, was well aware of the inconsistencies in Grant's testimony.

Petitioner also asserts that the prosecutor engaged in misconduct by playing only part of the DVD of his police interview. Contrary to Petitioner's assertion, the prosecutor did not fail to disclose the DVD to the defense. Rather, the prosecution stopped playing the DVD before the trial court when the police officer left the room and Petitioner was left alone with defense counsel. Such action was appropriate to protect the attorney-client privilege, as agreed to by the parties at trial. *See* 11/9/10 Trial Tr. Dkt. #6-4 Pg. ID 478–80. No misconduct occurred.

Petitioner next asserts that the prosecutor engaged in misconduct by overcharging him with second-degree murder. A prosecutor has significant discretion in determining what charge to file against an accused, provided that probable cause exists to believe that the accused committed the offense under the charging statute. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *United States v. Davis*, 15 F.3d 526, 529 (6th Cir. 1994). A prosecutor, however, may not undertake a prosecution based upon a vindictive motive, *Bordenkircher*, 434 U.S. at 363, or based upon race, religion, or some other arbitrary classification. *Oyler v. Boles*, 368 US. 448, 456 (1962). In this case, there was probable cause to believe that Petitioner was guilty of

the charged offenses based upon the witnesses' descriptions of the incident. To be sure, as the Michigan Court of Appeals and this court have found, there was sufficient evidence to support a second-degree murder conviction. There is no indication that the prosecutor's charging decision was vindictive or based upon any impermissible factors. Petitioner fails to establish that the prosecutor abused his discretion or violated constitutional principles by charging Petitioner with second-degree murder.

Lastly, Petitioner again asserts that the prosecutor engaged in misconduct by arguing facts not in evidence. As noted, prosecutors may not misstate the evidence, *Carter*, 236 F.3d at 784, or argue facts not in evidence, *Abela*, 380 F.3d at 929, but they have "'leeway to argue reasonable inferences from the evidence' during closing arguments." *Crosgrove*, 637 F.3d at 664 (quoting *Byrd*, 209 F.3d at 535). Petitioner essentially re-asserts his previous assertions of misconduct. The court, however, has already addressed those issues, and Petitioner's continued assertions are unavailing. Moreover, as previously explained, even if the prosecutor somehow erred, Petitioner cannot establish that he was prejudiced because the bench trial judge is presumed to have considered only relevant and admissible evidence in reaching a decision. *See Harris*, 454 U.S. at 346; *Joseph*, 781 F.2d at 552; *Brown*, 19 F. App'x at 157. Petitioner has not rebutted this presumption. In sum, Petitioner fails to establish that the prosecutor erred or that any improper conduct rendered his trial fundamentally unfair. Habeas relief is not warranted on these claims.

### d. Ineffective Assistance of Trial Counsel (Habeas Claim XI)

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for not trying to admit evidence of the victim's and his friends' alleged

gang affiliation, for not having the entire DVD of Petitioner's police statement played into evidence, for not arguing the correct self-defense standard, and for failing to successfully argue the self-defense claim. As discussed *supra*, in order to establish ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

Petitioner fails to establish that trial counsel erred or that he was prejudiced by counsel's conduct. First, Petitioner fails to establish that evidence of gang affiliation would have been admissible under state law, and it appears that it would not have been admissible for the purpose of arguing that the men "acted in conformity with the character traits commonly associated with gang members on a particular occasion." *People v. Bynum*, 852 N.W.2d 570, 581 (Mich. 2014). Counsel cannot be ineffective for failing to argue a meritless position. *Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225. Additionally, such evidence was unlikely to sway the trial court, which specifically found that Petitioner pursued the victim and the other men—who were unarmed and had not threatened him—said he should shoot someone in the back, pulled out a gun, and fired at the victim during the struggle over the gun. In other words, even if the victim and his friends were gang members, the trial court would still have found that Petitioner instigated the violence and did not reasonably act in self-defense based upon the witnesses' testimony at trial.

Second, as previously discussed, it was appropriate for the parties not to play the entire DVD of Petitioner's police statement to protect the attorney-client privilege. Moreover, while Petitioner's statements to police were admissible under Michigan Rule

34

of Evidence 801(d)(2), his statements to counsel were not admissible under an exception to the hearsay rule. Again, counsel cannot be deemed ineffective for failing to argue a meritless position. *Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225.

Third, Petitioner fails to show that trial counsel failed to argue the correct self-defense standard or failed to sufficiently argue the self-defense claim. Rather, the record indicates that counsel thoroughly questioned witnesses and made reasonable arguments in support of Petitioner's self-defense claim. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Moreover, as discussed, the record indicates that the trial court properly considered the elements of the charged offenses, as well as Petitioner's claim of self-defense. Petitioner fails to establish that counsel erred or that he was prejudiced by counsel's conduct in this regard. In sum, Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on these claims.

### 3. Ineffective Assistance of Appellate Counsel (Habeas Claim XII)

Lastly, Petitioner asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise arguments on direct appeal. Respondent contends that this claim lacks merit. Petitioner raised this claim on collateral review in the state courts. The trial court ruled that Petitioner failed to establish that counsel was ineffective under the *Strickland* standard. The court explained that appellate counsel

was not ineffective for winnowing out weaker arguments, stated that it would not second-guess counsel's strategy, and found that Petitioner could not show any prejudice from counsel's conduct. *Smith*, Wayne Co. Cir. Ct. No. 10-007618-01-FC, at *3–4. The appellate courts denied leave to appeal pursuant to Michigan Court Rule 6.508(D).

The state courts' decisions are neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. As discussed *supra*, in order to establish ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. With regard to appellate counsel, it is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751–52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate

counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Appellate counsel may deliver deficient performance and prejudice a defendant by

omitting a significant issue, but such an issue must be "obvious" from the record below.

 *Shelton v. McQuiggin*, 651 F. App'x 311, 314 (6th Cir. 2016).

Petitioner fails to show that appellate counsel's performance fell outside the

wide range of professionally competent assistance. Appellate counsel raised

substantial claims on direct appeal, including double jeopardy and insufficient evidence

claims (Petitioner raised the prosecutorial misconduct and ineffective assistance of trial

counsel claims in his own brief). None of the other claims raised by Petitioner on his

own behalf were significant and obvious, as evidenced by the Michigan Court of

Appeals' decision denying relief on those claims, the decisions denying relief on

collateral review, and this court's determination that the claims lack merit. Nor has

Petitioner shown that appellate counsel failed to subject his case to meaningful

adversarial testing. Furthermore, even if appellate counsel erred in some fashion,

Petitioner cannot show that he was prejudiced by counsel's conduct given that the

underlying claims lack merit. *See* discussion *supra*. Habeas relief is not warranted on

this claim.

## V.  Conclusion

Petitioner is not entitled to federal habeas relief on the claims contained in his

petition. Accordingly, the court DENIES and DISMISSES WITH PREJUDICE the

petition for a writ of habeas corpus.

Before Petitioner may appeal the court's decision, a certificate of appealability

must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of

appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484–85.

Having considered the matter, the court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the court's procedural rulings. Accordingly, the court **DENIES** a certificate of appealability.

Lastly, the court **DENIES** Petitioner leave to proceed in forma pauperis on appeal because an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED**.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: November 21, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 21, 2017, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\15-11712.SMITH.deny.2254.ctb.KNP2.wpd